**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MARCEL CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-1215-JAR |
| ) | |
| HAZELWOOD, MISSOURI POLICE ) | |
| DEPARTMENT and ST. LOUIS COUNTY, ) | |
| MISSOURI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the application of self-represented plaintiff Marcel Clark for leave to commence this civil action without payment of the required filing fee. Plaintiff was a pretrial detainee at Moberly Correctional Center when he filed this action. Subsequently, plaintiff filed a change of address notice with the Court indicating he had been released from custody. Because plaintiff was released from confinement after filing the instant action, the Court will grant his request to proceed *in forma pauperis* and will not assess an initial partial filing fee at this time. Additionally, for the reasons discussed below, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Filing Fee

Under 28 U.S.C. § 1915(b)(1), when a prisoner brings a civil action *in forma pauperis*, the prisoner must pay the full amount of the filing fee, usually in the form of an initial partial payment then installment payments over time. However, a non-prisoner plaintiff can litigate without payment of any fees if he qualifies under the general *in forma pauperis* provision of 28 U.S.C. § 1915(a)(1).

"Federal circuit authority is split on the question of whether the PLRA [Prison Litigation Reform Act] prison litigation provisions of § 1915 continue to govern if and after the prisoner is released *pendente lite* (that is, during the litigation). The Fifth, Seventh and District of Columbia Circuits have held that the full payment requirement is triggered upon the filing of the (as applicable) complaint or notice of appeal[.]" *Putzer v. Attal*, 2013 WL 4519351, at *1 (D. Nev. Aug. 23, 2013) (internal citations omitted). "The Second, Fourth, Sixth and Tenth Circuits have concluded to the contrary, that the requirements of the PLRA do not continue to apply after the plaintiff is released." *Id.*

The Eighth Circuit has not ruled on this issue, however, because plaintiff was released after he filed this case but before the Court had the opportunity to rule on his motion for *in forma pauperis*, the Court will consider plaintiff as he currently stands at the time of the review of his motion – a non-prisoner plaintiff under 28 U.S.C. § 1915(a)(1). Based on the financial information submitted, the Court finds that plaintiff does not have sufficient funds to pay the filing fee and will grant his motion.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights based on two separate arrests that occurred on February 28, 2020 and March 3, 2020. Plaintiff lists Hazelwood, Missouri Police Department and St. Louis County, Missouri as defendants.

First, plaintiff alleges that on March 3, 2020, "after being searched, handcuffed and arrested for a property crime, the arresting officer tried to provoke [him] by calling [him] a name." Plaintiff states he ignored the officer, who subsequently threw plaintiff's phone on the ground and "twisted the handcuffs trying to break [his] wrist while trying to act normal as if he [was] doing nothing." Plaintiff states he "cried out in pain" after the officer twisted them harder. Plaintiff states a female officer "would watch and then turn her head whenever [their] eyes met."

Plaintiff further alleges that "[a] few days earlier while walking down the street in Hazelwood [he] was searched, handcuffed and arrested because [he] was 'Black.'" The officer informed him that he "match[ed] the d[e]scription of a person who committed a crime." Plaintiff allegedly asked the officer whether his dash and body cameras were recording, and the officer responded that they were but "he could do whatever he wanted." A second officer arrived on the scene and allegedly searched plaintiff a second time. Plaintiff states he was ultimately arrested for "public intoxication" because the officer claimed he "could smell liquor" on his breath. Plaintiff states he was not drinking and offered to submit to a breathalyzer test, which the officer declined.

Plaintiff alleges that the Hazelwood Police Department "operates within the St. Louis County area, and St. Louis County should also be held accountable for Hazelwood's Police Department's officers and their ability to do what they want without regards of the law[.]"

Plaintiff described his injuries as right arm numbness, post-traumatic stress syndrome, anxiety, and depression. For relief, plaintiff seeks 10,000,000 in monetary damages.

## Discussion

Having thoroughly reviewed and liberally construed plaintiff's complaint, the Court concludes that it fails to state any actionable claims or establish entitlement to any form of relief.

### A. Defendant Hazelwood, Missouri Police Department

Plaintiff's claims against the Hazelwood, Missouri Police Department fail as a matter of law and must be dismissed. Relevant precedent establishes that a department or subdivision of local government is not a "juridical," or suable, entity under 42 U.S.C. § 1983. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (1992) (affirming dismissal of West Memphis Police Department because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities); *Ballard v. Missouri*, 2013 WL 1720966, *3 (E.D. Mo. Apr. 22, 2013) (holding that "[p]laintiff's claims against the City of St. Louis Department of Public Safety, the St. Louis County Justice Center, the St. Louis City Justice Center, and MSI/Workhouse are legally frivolous because these defendants are not suable entities").

### B. Defendant St. Louis County, Missouri

Plaintiff's claims against the St. Louis County, Missouri fail as a matter of law and must be dismissed. Plaintiff alleges "St. Louis County should also be held accountable for Hazelwood's Police Department's officers and their ability to do what they want without regards of the law[.]" This allegation does not a state a claim of municipal liability. "In an action under § 1983, a municipality . . . cannot be liable on a *respondeat superior* theory." *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018).

However, a local governing body can be sued directly under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type

of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not demonstrated that St. Louis County violated his constitutional rights due to a policy, custom, or failure to train.

With regard to an unconstitutional policy, plaintiff's facts do not identify any St. Louis County "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body," much less demonstrate that such a policy statement, ordinance, regulation, or official decision violated his constitutional rights. In other words, plaintiff

has not demonstrated that he was harmed by "a deliberate choice of a guiding principle or procedure made by" a St. Louis County official.

As to an unconstitutional custom, plaintiff has presented no facts establishing the existence of "a continuing, widespread, persistent pattern of unconstitutional misconduct" by St. Louis County employees, much less that officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than presenting a widespread pattern, plaintiff's complaint focuses on two unrelated arrests in which the officers acted in dissimilar ways. In one incident, plaintiff alleges the officer arrested him because of his skin color but does not describe any physical assault by the officer. In the other incident, plaintiff alleges the officer attempted to provoke him with an insult and hurt his wrists by twisting his handcuffs. The Court cannot infer the existence of an unconstitutional policy or custom from these two unrelated occurrences in which he alleges different violations and actions by the arresting officers. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Likewise, with regard to a deliberately indifferent failure to train or supervise, plaintiff has not demonstrated a "pattern of similar constitutional violations by untrained employees." Instead, as noted above, plaintiff's complaint focuses on two dissimilar arrests.

Because plaintiff has not alleged facts showing an unconstitutional policy, custom, or failure to train on the part of St. Louis County, he has not stated a municipal liability claim. Therefore, plaintiff's § 1983 action against St. Louis County must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**C. Failure to State a Claim**

Plaintiff has only named the Hazelwood, Missouri Police Department and St. Louis County, Missouri as defendants, however, even if he named the police officers responsible for his alleged injuries, his claims simply do not rise to the level of a constitutional violation.

Plaintiff alleges an unnamed officer twisted his handcuffs causing him pain and numbness. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's

9

chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minims use of force." *Robinson*, 937 F.3d at 1136.

As pled, plaintiff's allegations here regarding his handcuffing do not support an excessive force claim under the Fourth Amendment. Specifically, plaintiff states he experienced pain when an officer twisted his handcuffs. Handcuffing, however, almost by definition, requires the use of force, and plaintiff has not established that this particular use of force was excessive. *See Chambers*, 641 F.3d at 907 (citations omitted) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied. To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more"); *see also See also Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) (finding no excessive force in securing handcuffs so tightly they made plaintiff's hand bleed) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2000) (stating "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.")).

Most importantly, plaintiff has not demonstrated that being placed in handcuffs or having the handcuffs "twisted" by the arresting officer was unreasonable under the circumstances. As noted above, the determination as to whether force was excessive turns on reasonableness. Plaintiff does not provide any facts indicating that he was cooperating with the officer or complying with

orders. Plaintiff only states that he "ignored" the officer after he was "call[ed] a name," which appeared to cause the officer to tighten or twist plaintiff's handcuffs. Without any indication as to plaintiff's actions in relation to the law enforcement officer, plaintiff has not established that the force used against him was unreasonable and thereby excessive. Therefore, even if the officer had been named as a defendant in this action and sued in his individual capacity, the excessive claim against him would be subject to dismissal.

To any extent plaintiff complains about verbal harassment from the officer who called him "a name," such an allegation fails to rise to the level required to establish a constitutional violation. *See, e.g., McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *King v. Olmsted*, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right). Moreover, a mere threat to do an unconstitutional act does not create a constitutional wrong. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (noting that a mere naked threat to engage in an act prohibited by the Constitution is not equivalent to doing the act itself). And a deprivation of "peace of mind" similarly does not support a constitutional claim. *King*, 117 F.3d at 1067.

Lastly, plaintiff alleges he was arrested "because [he] was black." The Equal Protection Clause provides, in part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of its laws." U.S. Const. amend. XIV, § 1. The central purpose of this constitutional guarantee is the prevention of official conduct discriminating on the basis of race. *Washington v. Davis*, 426 U.S. 229, 239 (1976). A plaintiff alleging an equal protection violation under § 1983 must establish that the unlawful discrimination was intentional. *See Monteiro v.*

11

*Tempe Union High School Dist.*, 158 F.3d 1022, 1025 (1998); *Washington v. Davis*, 426 U.S. 229, 239-42 (1976) (Proof of racially discriminatory intent or purpose is required to show a violation of the equal protection clause.)

In the instant complaint, plaintiff states he was told by an officer that he was being stopped because he matched the description of a person who committed a crime and was subsequently arrested for public intoxication. Plaintiff denies drinking alcohol prior to the arrest, however, the officer allegedly asserted he smelled liquor on plaintiff's breath. Plaintiff does not point to any statements or actions showing the officer stopped him or arrested him strictly because of his race, other than him matching the description of another individual. Thus, as pled, plaintiff's equal protection claim is subject to dismissal because he has failed to present any facts to plausibly support that his arrest was motivated by an intention to discriminate against plaintiff due to his race. *See e.g.*, *Mitchell v. Las Vegas Metropolitan Police Dept., et al.*, 2021 WL 808735, *5 (D. Nev. Mar. 3, 2021) (finding plaintiff's identification as an "African American" and a "[B]lack man" insufficient by itself to suggest defendants "acted with an intent or purpose to discriminate" against him based on race); *Buchanan v. Weaver*, 2013 WL 12180997, at *3 (W.D. Wis. Dec. 23, 2013) (to allege discriminatory intent, a plaintiff must allege some facts to create and inference of discriminatory effect or purpose of race-based motivation).

## Motion to Appoint Counsel

Plaintiff has filed a motion for the appointment of counsel. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). *See also Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) ("In civil cases, there is no constitutional or statutory right to appointed counsel . . . Rather a court may

request an attorney to represent any person unable to afford counsel"). Plaintiff's motion will be denied as moot, given the fact that plaintiff's claims are being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint because the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED** at this time.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 10th day of May, 2021.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE